**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-20234-CIV-GAYLES/OTAZO-REYES**
**(Case No. 15-20032-CR-GAYLES)**

BRIAN DERONCELER,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Movant Brian Deronceler's ("Movant" or "Deronceler") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (hereafter, "Motion to Vacate") [D.E. 1]; and Memorandum of Law in Support of Motion to Vacate (hereafter, "Memorandum") [D.E. 1-1]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 7]. The undersigned held an evidentiary hearing on the Motion to Vacate on August 23, 2021 (hereafter, "Evidentiary Hearing") [D.E. 41]. Having conducted a thorough review of the parties' submissions and the pertinent portions of the record and having considered the matters presented at the Evidentiary Hearing, the undersigned respectfully recommends that the Motion to Vacate be DENIED.

## THE UNDERLYING CRIMINAL CASE

On January 22, 2015, Deronceler and four other individuals were charged by way of Indictment in Case No. 15-20032-CR-GAYLES (hereafter, "Case 15-20032") with the following crimes:

Count 1:   Conspiracy to commit bank fraud, against **Deronceler**, Scarlee Valias Jean ("Jean"), Stanley Presendieu ("Presendieu"), Latasha Pharr ("Pharr") and Jason Miles ("Miles"), from March 2010 to August 2014, in violation of 18 U.S.C. § 1349.

Counts 2-22:   Bank fraud, in violation of 18 U.S.C. § 1344, as shown below:

| Count | Defendant(s) | Date | Bank | Individual(s) |
|---|---|---|---|---|
| 2 | Miles | 01/28/11 | Wachovia | X.Y.B. |
| 3 | Miles | 02/04/11 | Wachovia | C.J. |
| 4 | Miles | 02/22/11 | Wachovia | A.H. |
| 5 | Miles | 02/22/11 | Wachovia | R.T. |
| 6 | Miles | 02/28/11 | Wachovia | W.J. |
| 7 | Presendieu, Pharr | 05/04/12 | Bank of America | J.S. |
| 8 | Presendieu, Pharr | 05/11/12 | Bank of America | M.C. |
| 9 | Presendieu, Pharr | 05/17/12 | Bank of America | T.A. |
| 10 | Presendieu | 10/03/13 | Federal Reserve | U.O. |
| 11 | Presendieu | 10/05/13 | Federal Reserve | R.R. |
| 12 | Presendieu | 10/05/13 | Federal Reserve | P.W. |
| 13 | Presendieu | 10/05/13 | Federal Reserve | D.A.V. |
| 14 | Jean | 10/25/13 | Federal Reserve | J.W. |
| 15 | Jean | 11/06/13 | Federal Reserve | F.W.A. & T.A. |
| 16 | Jean | 11/06/13 | Federal Reserve | J.A.L. & S.A.L. |
| 17 | Jean, **Deronceler** | 11/15/13 | Federal Reserve | J.G.I. & D.I. |
| 18 | Jean, **Deronceler** | 11/15/13 | Federal Reserve | J.G. |
| 19 | **Deronceler** | 02/12/14 | United Missouri | A.S. |
| 20 | **Deronceler** | 02/12/14 | Ohio Valley | S.D.J. |
| 21 | Pharr | 07/09/14 | Federal Reserve | K.C. |
| 22 | Pharr | 07/09/14 | Federal Reserve | A.G. |

Count 23:   Aggravated identity theft as to individual X.Y.B., against Miles, on January 28, 2011, in violation of 18 U.S.C. § 1028A.

Count 24:   Aggravated identity theft as to individual C.J., against Miles, on February 4, 2011, in violation of 18 U.S.C. § 1028A.

Count 25:   Aggravated identity theft as to individual A.H., against Miles, on February 22, 2011, in violation of 18 U.S.C. § 1028A.

Count 26:    Aggravated identity theft as to individual R.T., against Miles, on February 22, 2011, in violation of 18 U.S.C. § 1028A.

Count 27:    Aggravated identity theft as to individual W.J., against Miles, on February 28, 2011, in violation of 18 U.S.C. § 1028A.

Count 28:    Aggravated identity theft as to individual J.S., against Presendieu and Pharr, on May 4, 2012, in violation of 18 U.S.C. § 1028A.

Count 29:    Aggravated identity theft as to individual M.C., against Presendieu and Pharr, on May 11, 2012, in violation of 18 U.S.C. § 1028A.

Count 30:    Aggravated identity theft as to individual T.A., against Presendieu and Pharr, on May 17, 2012, in violation of 18 U.S.C. § 1028A.

Count 31:    Aggravated identity theft as to individual U.O., against Presendieu, on October 3, 2013, in violation of 18 U.S.C. § 1028A.

Count 32:    Aggravated identity theft as to individual R.R., against Presendieu, on October 5, 2013, in violation of 18 U.S.C. § 1028A.

Count 33:    Aggravated identity theft as to individual P.W., against Presendieu, on October 5, 2013, in violation of 18 U.S.C. § 1028A.

Count 34:    Aggravated identity theft as to individual D.A.V., against Presendieu, on October 5, 2013, in violation of 18 U.S.C. § 1028A.

Count 35:    Aggravated identity theft as to individual J.W., against Jean, on October 25, 2013, in violation of 18 U.S.C. § 1028A.

Count 36:    Aggravated identity theft as to individual F.W.A., against Jean, on November 6, 2013, in violation of 18 U.S.C. § 1028A.

Count 37:    Aggravated identity theft as to individual J.A.L., against Jean, on November 6, 2013, in violation of 18 U.S.C. § 1028A.

Count 38:    Aggravated identity theft as to individual J.G.I., against Jean and **Deronceler**, on November 15, 2013, in violation of 18 U.S.C. § 1028A.

Count 39:    Aggravated identity theft as to individual J.G., against Jean and **Deronceler**, on November 15, 2013, in violation of 18 U.S.C. § 1028A.

Count 40:    Aggravated identity theft as to individual A.S., against **Deronceler**, on February 12, 2014, in violation of 18 U.S.C. § 1028A.

Count 41:    Aggravated identity theft as to individual S.D.J., against **Deronceler**, on February 12, 2014, in violation of 18 U.S.C. § 1028A.

<u>See</u> Indictment [Case 15-20032, D.E. 3].

On January 28, 2015, Deronceler made his initial appearance, at which he stated that he "d[id] not want counsel[.]" <u>See</u> Minutes [Case 15-20032, D.E. 14]. On January 31, 2015, Deronceler executed a document entitled "Affidavit of Conditional Acceptance and Counterclaim for Constructive Fraud Upon the Courts" (hereafter, "Affidavit"). <u>See</u> Affidavit [Case 15-20032, D.E. 20]. Therein, Deronceler referred to himself as "Deronceler, Brian a living breathing sentient man on Special Appearance in Propia Personam." <u>Id.</u> at 1. He also purported to accept all charges in the Indictment, subject to the following conditions:

1. Upon Proof of Claim in writing that THE UNITED STATES OF AMERICA IS AN ACTUAL INJURED PARTY[.]

2. Upon Proof of Claim that THE UNITED STATES OF AMERICA can conduct business with a flesh and blood breathing soul.

3. Upon Proof of Claim that THE UNITED STATES OF AMERICA that codes alleged violated are LAWS and not PUBLIC POLICY.

4. Upon Proof of Claim that THE UNITED STATES OF AMERICA JUDGE who is assigned has not taken **any** money from THE UNITED STATES OF AMERICA (named Plaintiff) to preside over the alleged case.

5. Upon Proof of that THE UNITED STATES OF AMERICA can prove that Deronceler, Brian and **BRIAN DERONCELER** are one and the same.

6. THE UNITED STATES OF AMERICA provide respondent with Cusip number and 1099 OID information to discharge this debt in accordance with HJR 192.

<u>Id.</u>

On February 2, 2015, Deronceler appeared for report re: counsel, arraignment, and pretrial detention hearing before Magistrate Judge Chris M. McAliley ("Judge McAliley"). <u>See</u> Minute Entry [Case 15-20032, D.E. 22]. On February 6, 2015, Judge McAliley entered an "Order for

4

Competency Evaluation of Defendant Deronceler, Setting Competency Hearing Before Judge

Gayles and Appointing Standby Counsel" (hereafter, "Initial Order") [Case 15-20032, D.E. 34].

The Initial Order provided, in pertinent part:

> The Defendant, Brian Deronceler, who is in the custody of the Bureau of Prisons, appeared before this Court on February 2, 2015 for a pretrial detention hearing and a report regarding counsel.  At that time, the Defendant insisted that he represent himself in these proceedings and not be represented by counsel.  He said the same earlier, at his initial appearance [DE 14].
>
> I attempted to inform the Defendant of his rights and to otherwise discuss with him the nature of these proceedings, in an effort to determine whether he was capable of making a knowing, informed and voluntary waiver of his right to representation by counsel, consistent with the requirements of *Faretta v. California*, 422 U.S. 806 (1975).  *See also U.S. [v.] Smith*, 417 Fed. Appx. 911, 914 (11th Cir. 2011); *U.S. v. Evans*, 478 F.3d 1332, 1340 (11th Cir. 2007).  The Defendant's replies to my inquiries were mostly non responsive and often nonsensical.
>
> For example, the Defendant said that he did not know his age or education.  He claimed he was not a United States citizen, stating "I am a corporation;" he also said he was "living flesh," that "blood flowed through my veins" and he was "the living entity."  The Defendant repeatedly announced that he would conditionally accept "all offers of dismissal."  The Defendant continued with this declaration despite my explaining, and the government confirming, that the government would not offer to dismiss the charges against him.  The Defendant also maintained that he did not understand my statements, including those about his rights.
>
> It is not clear to me whether the Defendant's behavior was motivated by his deliberate desire to be uncooperative and to disrupt these proceedings, or if he perhaps is suffering from some impairment of cognition or mental illness.  His behavior has given this Court reasonable cause to believe that he "may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. §4241(a). Under these circumstances it is not possible for the Court to determine whether the Defendant is indigent; nor is it possible to proceed with a pretrial detention hearing or other proceedings regarding the Defendant.

Id. at 1-2.  Judge McAliley appointed Terence Michael Lenamon, Esq. ("Attorney Lenamon") as

standby counsel for Deronceler over his objection, directed the Bureau of Prison to conduct an

evaluation of Deronceler's competency to stand trial, and scheduled a competency hearing before

the Honorable Darrin P. Gayles, United States District Judge.  Id. at 3-4.

Subsequently, Deronceler submitted documents for filing in Case 15-20032 captioned as:

> "UCC Financing Statement" [Case 15-20032, D.E. 73, filed on 3/12/15]

> "JUDICIAL NOTICE, NOTICE TO THE ADMINISTRATIVE COURT, ALL COURTS ARE OPERATING UNDER (1) TRADING WITH THE ENEMY ACT AS CODIFIED IN TITLE 50 USC, (2) TITLE 28 USC, CHAPTER 176, FEDERAL DEBT COLLECTION PROCEDURE, AND (3) FED.R.CIV.P. 4(j) UNDER TITLE 28 USC §1608, MAKING THE COURTS "FOREIGN STATES" TO THE PEOPLE BY CONGRESSIONAL MANDATE" [Case 15-20032, D.E. 81 and 83, filed on 3/23/15]

> "ADMINISTRATIVE NOTICE; IN THE NATURE OF WRIT OF ERROR CORAM NOBIS & A DEMAND FOR DISMISSAL OR STATE THE PROPER JURISDICTION" [Case 15-20032, D.E. 82, filed on 3/23/15]

> "TREATY OF PEACE AND FRIENDSHIP" [Case 15-20032, D.E. 84, filed on 3/23/15]

> "NATIONALITY" [Case 15-20032, D.E. 85, filed on 3/23/15]

On April 10, 2015, the Court held a Competency Hearing, at which Deronceler was found competent to stand trial.  See Paperless Minute Entry [Case 15-20032, D.E. 97].[1]

On April 21, 2015, Magistrate Judge William C. Turnoff ("Judge Turnoff") conducted a Faretta Hearing pursuant to the Court's referral order.  See Endorse Order [Case 15-20032, D.E. 99]; Paperless Minute Order [Case 15-20032, D.E. 107].  At the Faretta Hearing, Judge Turnoff advised Deronceler "of his right to be represented by counsel, the advisory sentencing guidelines with respect to his case, the Federal Rules of Evidence & Federal Rules of Criminal Procedure." See Paperless Minute Order [Case 15-20032, D.E. 107].    Judge Turnoff then found that Deronceler was "waiving his right to counsel" and further found "it appropriate" for Attorney Lenamon to "remain in the case" as standby counsel.  Id. Judge Turnoff also ordered that

---

[1]  Defendant's Competency Report was marked as Government's Sealed Exhibit (1) to the Competency Hearing.  Id.  As more fully discussed below, the Competency Report was issued by Dr. Jorge Luis.

6

Deronceler be detained pending trial based on risk of flight and danger to the community.  Id.
Finally, Judge Turnoff arraigned Deronceler as follows: "Reading of the indictment waived, plea
of not guilty entered by the Court as to the defendant, jury trial demanded, and Standing Discovery
Order entered."  Id.

Thereafter, Deronceler submitted additional (and sometimes duplicative) documents for
filing in Case 15-20032 captioned as:

➢ "JUDICIAL NOTICE, NOTICE TO THE ADMINISTRATIVE COURT, ALL
COURTS ARE OPERATING UNDER (1) TRADING WITH THE ENEMY ACT
AS CODIFIED IN TITLE 50 USC, (2) TITLE 28 USC, CHAPTER 176,
FEDERAL DEBT COLLECTION PROCEDURE, AND (3) FED.R.CIV.P. 4(j)
UNDER TITLE 28 USC §1608, MAKING THE COURTS "FOREIGN STATES"
TO THE PEOPLE BY CONGRESSIONAL MANDATE" [Case 15-20032, D.E.
138, filed on 6/3/15]

➢ "Notice of Understanding and Intent and Claim of Right", bearing insignia labeled
"I.S.L.A.M.", "Moorish Americans", and "Northwest Amexem" [Case 15-20032,
D.E. 139, filed on 6/3/15; D.E. 152, filed on 6/5/15]

➢ "NOTICE OF SPECIAL APPEARANCE", bearing insignia labeled "I.S.L.A.M.",
"Moorish Americans", and "Northwest Amexem", and signature purporting to be
that of "Baas El-Bey" [Case 15-20032, D.E. 140, filed on 6/3/15; D.E. 178, filed
on 8/5/15; D.E. 198, filed on 8/10/15]

➢ "ADMINISTRATIVE NOTICE; IN THE NATURE OF WRIT OF ERROR
CORAM NOBIS & A DEMAND FOR DISMISSAL OR STATE THE PROPER
JURISDICTION" [Case 15-20032, D.E. 143, filed on 6/4/15]

➢ "Affidavit: Notice of Rescission of Signatures" [Case 15-20032, D.E. 169, filed on
7/23/15]

On August 5, 2015, a calendar call was held at which Deronceler represented himself with
standby counsel Attorney Lenamon and standby co-counsel Daniel Schwarz ("Attorney Schwarz")
also present.  See Calendar Call Transcript [Case 15-20032, D.E. 342, at 3-4].  At the calendar
call, Assistant United States Attorney Karen Rochlin ("AUSA Rochlin") informed the Court of a
comment [that had been] made that Mr. Deronceler had not seen the discovery in this case."  Id.

at 14. According to AUSA Rochlin, "the United States [had] timely produced discovery to standby counsel with the understanding . . . that it would be . . . conveyed to the defendant." Id. In response, Attorney Schwarz explained that he had previously attempted to deliver to Deronceler some discovery materials provided by the government, including videos, by going to the Federal Detention Center ("FDC") in person and also by writing letters asking Deronceler if he wanted "to take a look at it." Id. at 15-16. When asked if he had a problem with Attorney Schwarz dropping off all the discovery to him, Deronceler responded:

> I have a problem of my facts being handed over to a third party that I did not consent to. I need my evidence. As a matter of fact, I don't need evidence. I need facts because the courts can only move on facts, and I need the facts sent to me so I can review it. And I have not reviewed any facts. This needs to be handled in a timely matter.

Id. at 18-19. The Court then instructed Attorney Schwarz to deliver to Deronceler the discovery materials at FDC the next day by 4:00 p.m. Id. at 20-21.

From August 10, 2015, to August 19, 2015, a jury trial was held for Deronceler and Pharr, at which Deronceler represented himself with Attorney Lenamon and Attorney Schwarz as stand-by counsel. See Paperless Minute Entries [Case 15-20032, D.E. 199, 202-03, 205-06, 208-10]; Transcript of Jury Trial, Volumes I through VIII [Case 15-20032, D.E. 250-57]. The jury found Deronceler guilty as to all Counts charged against him in the Indictment, namely, Counts 1, 17-20, and 38-41. See Verdict [Case 15-20032, D.E. 213].

After the trial concluded, Deronceler submitted additional (and sometimes duplicative) documents for filing in Case 15-20032 captioned as:

> ➢ "NOTICE OF CHALLENGING JURISDICTION" [Case 15-20032, D.E. 219, filed on 9/1/15]
>
> ➢ "NOTICE OF CORPORATE ENTITY" [Case 15-20032, D.E. 220, filed on 9/1/15]
>
> ➢ "NOTICE OF LEGAL ENTITY" [Case 15-20032, D.E. 221, filed on 9/1/15]

> ➤ "NOTICE JUDGMENT OF ACQUITTAL" [Case 15-20032, D.E. 222, filed on 9/1/15]

> ➤ "NOTICE NATIONALITY" [Case 15-20032, D.E. 223, filed on 9/1/15]

> ➤ "JUDICIAL NOTICE, NOTICE TO THE ADMINISTRATIVE COURT, ALL COURTS ARE OPERATING UNDER (1) TRADING WITH THE ENEMY ACT AS CODIFIED IN TITLE 50 USC, (2) TITLE 28 USC, CHAPTER 176, FEDERAL DEBT COLLECTION PROCEDURE, AND (3) FED.R.CIV.P. 4(j) UNDER TITLE 28 USC §1608, MAKING THE COURTS "FOREIGN STATES" TO THE PEOPLE BY CONGRESSIONAL MANDATE" [Case 15-20032, D.E. 224, filed on 9/1/15]

> ➤ "DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL" [Case 15-20032, D.E. 225, filed on 9/2/15]

> ➤ "JUDGMENT OF ACQUITTAL" [Case 15-20032, D.E. 231, filed on 9/14/15]

On September 10, 2015, Joffe Law, P.A. and David J. Joffe, Esq. (hereafter, "Attorney Joffe") entered their appearance as counsel of record for Deronceler [Case 15-20032, D.E. 229]. Attorney Joffe filed the following sentencing submissions: Objections to Presentence Investigation Report (hereafter, "First Objections") [Case 15-20032, D.E. 284]; Sentencing Memorandum in Support of Request for Downward Departure and Variance (hereafter, "Sentencing Memorandum") [Case 15-20032, D.E. 285]; Supplement to Sentencing Memorandum [Case 15-20032, D.E. 316]; and Objections to Amended Presentence Investigation Report and Addendum (hereafter, "Second Objections") [Case 15-20032, D.E. 317].

On November 2, 2015, the Court held a sentencing hearing at which Deronceler was sentenced to a term of 87 months as to Counts 1, 17, 18, 19 and 20, plus consecutive terms of 24 months as to each of Counts 38, 39, 40 and 41, for a total term of 183 months.  See Paperless Minute Entry [Case 15-20032, D.E. 319]; Judgment [Case 15-20032, D.E. 320].

On November 3, 2015, Attorney Joffe filed a Notice of Appeal on behalf of Deronceler [Case 15-20032, D.E. 321].  On June 11, 2018, the Eleventh Circuit Court of Appeals issued its Mandate, affirming Deronceler's conviction and sentence.  See Mandate [Case 15-20032, D.E. 409].  On November 5, 2018, the United States Supreme Court denied Deronceler's petition for writ of certiorari [D.E. 439].

## THE MOTION TO VACATE

Deronceler's Motion to Vacate lists the following five grounds:

GROUND ONE:          Deronceler's appellate counsel was ineffective for failing to raise two clear Faretta issue claims.

GROUND TWO:          Deronceler's Sixth Amendment right to Counsel was violated by the Court's failure to conduct a full Faretta Hearing prior to his Competency Hearing.

GROUND THREE:      Deronceler's waiver of his right to counsel at the April 21, 2015, Faretta Hearing was not knowing and voluntary.

GROUND FOUR:        The Court's denial of Deronceler's Motion to Continue Trial violated his Fourteenth Amendment right to due process.[2]

GROUND FIVE:         Sentencing counsel was ineffective for failing to investigate Mr. Deronceler's mental health history and have Mr. Deronceler evaluated prior to sentencing.

See Motion to Vacate [D.E. 1 at 4-9 & 13].

Movant acknowledged that he did not previously present any of the issues raised in GROUNDS ONE through FIVE to any federal court and provided as the reason that it was the "result of ineffective assistance of appellate counsel".  Id. at 9.

---

[2] There is no motion to continue trial in the record.  This ground relates to the delivery of discovery issues that were addressed by the Court at the August 5, 2015, calendar call.  See Motion to Vacate [D.E. 1 at 8].

## STANDARD OF REVIEW

### 1. *Motion to Vacate.*

Title 28, United States Code, Section 2255 (hereafter, "Section 2255") provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

### 2. *Procedural bar / cause and prejudice standard.*

"[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167 (1982). "When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error." Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994).

### 3. *Constitutional right to counsel and to self-representation.*

"Under the Sixth Amendment, criminal defendants are entitled to the assistance of counsel during all critical stages of the criminal justice process." Jones v. Walker, 540 F.3d 1277, 1287 (11th Cir. 2008). "A defendant may waive his right to counsel and represent himself so long as his choice to do so is made voluntarily and knowingly, with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 1287-88

(internal quotations and citations omitted).  Thus, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 835 (1975) (internal quotations omitted).

### 4. *Ineffective assistance of counsel.*

A claim for ineffective assistance of counsel under 28 U.S.C. § 2255 is subject to the two-pronged test set out in Strickland v. Washington, 466 U.S. 668 (1984).  Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced the defendant.  Id. at 687.  This standard equally applies to claims for ineffective assistance of appellate counsel.  Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016) (citation omitted).

As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance.  Strickland, 466 U.S. at 690.  The judiciary's scrutiny of counsel's performance is highly deferential.  Id. at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  "In reviewing counsel's performance, a court must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (citing Strickland, 466 U.S. at 689).  In order for counsel's performance to be considered unreasonable, it must be such that "no competent counsel would have taken the action that . . . counsel did take."  Grayson v. Thompson, 257 F.3d

1194, 1216 (11th Cir. 2001) (emphasis omitted).  "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments." Overstreet, 811 F.3d 1283, 1287.  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000); Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)). Further, there is no ineffective assistance of appellate counsel when the failure to raise a particular issue had "a sound strategic basis".  Burger v. Kemp, 483 U.S. 776, 784 (1987); see also Strickland, 466 U.S. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different.  Strickland, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one.  Id. at 697.  The Eleventh Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between." Chandler, 218 F.3d at 1313 (alteration omitted) (quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)).  The burden of persuasion on the movant is preponderance of the evidence. Chandler, 218 F.3d at 1313.

## **FINDINGS OF FACT**

The following witnesses testified at the Evidentiary Hearing: Dr. Jethro Toomer ("Dr. Toomer"); Dr. Jorge Luis ("Dr. Luis"); and Attorney Joffe.  See Evidentiary Hearing Transcript

[D.E. 51 at 2]. The undersigned found these witnesses to be unbiased and credible. The undersigned admitted into evidence Movant's Exhibits 1-9 and Government's Exhibits 1-26. <u>See</u> Exhibit & Witness List [D.E. 42 at 1-3]. Government's Exhibits 27-30 were not admitted but were marked for identification. <u>Id. at 3.</u>

### A. Dr. Toomer's testimony.

1.      Dr. Toomer testified at the Evidentiary Hearing as a clinical and forensic psychology expert.

2.      Dr. Toomer conducted a psychological evaluation of Deronceler upon Attorney Joffe's request to assess Deronceler's mental status and psychological function. The 4-hour evaluation took place on July 27, 2016, at a prison in Georgia where Deronceler was serving his sentence.

3.      Prior to conducting the evaluation, Dr. Toomer reviewed the trial transcript, the presentence investigation report, and Deronceler's criminal history.

4.      As part of his evaluation, Dr. Toomer also spoke to three individuals who knew Deronceler over time: Shaunte Brown; Latasha Neloms; and Patricia Harris (collectively, "Informants").

5.      Dr. Toomer administered several psychological tests to Deronceler: a test to assess whether Deronceler was malingering; a screening test for neurological impairment; a personality inventory; and an abbreviated I.Q. scale.

6.      With regard to the malingering test, namely, the Miller Forensic Assessment of Symptoms Test, Dr. Toomer did not find that Deronceler was malingering with respect to his responses to this test.

7.      With regard to the I.Q. test, Deronceler's overall I.Q. score was 84, which Dr.

Toomer characterized as "below average, below normal assessment of I.Q."  See Evidentiary Hearing Transcript [D.E. 51 at 14].  According to Dr. Toomer, Deronceler did not meet "the criteria for intellectual disability or anything like that."  Id. at 15.

8.     Dr. Toomer found Deronceler not to be a chronic substance abuser or dependent, notwithstanding an earlier opioid dependency that predated the crimes at issue in his case.

9.     With regard to personality, Dr. Toomer found Deronceler to have an underlying depressive component that was "waxing and waning, over time where there are periods where he is able to function appropriately, and there are other periods where he is not."  Id. at 16.

10.    Dr. Toomer learned from the Informants that Deronceler had a disruptive developmental process, impacted by an abusive home in his native country of Haiti, the death of his father, and head trauma from an automobile accident.  Dr. Toomer also noted that, at age 15, Deronceler had spent almost a year at a psychiatric care half-way house in Palm Beach County, Florida.  Additionally, Deronceler described experiencing five of the ten factors in the Adverse Childhood Experiences test.

11.    Dr. Toomer found that the stress and trauma experienced by Deronceler made his behavior "problematic."  Id. at 21.  Specifically, Dr. Toomer found Deronceler's behavior at trial to exhibit "bizarre intervals in terms of his being . . . unable to follow protocol, [and] speaking out of turn."  Id. at 22.

12.    With regard to Dr. Luis' competency evaluation of Deronceler, Dr. Toomer indicated that he would have done more, such as looking into Deronceler's developmental history and whether Deronceler had deliberative and decision-making capacity, as well as looking at all three accepted models on the issue of malingering for purposes of competency evaluation: the criminal model; the pathogenic model; and the adaptation model.  Based on his review of Dr. Luis'

report, it appeared to Dr. Toomer that it only reflected the criminal model of malingering, based on Dr. Luis' reference to Deronceler's apparent defense strategy as something that Dr. Luis had seen before and that had been gaining favor.

13.     On cross-examination, Dr. Toomer clarified that he had been retained in 2016 to prepare an evaluation of Deronceler, which took place on July 27, 2016, with a report issue date of April 25, 2017.

14.     Dr. Toomer acknowledged that the information regarding Deronceler's traumas was obtained from the Informants, based on their knowledge of Deronceler but not from their having witnessed the traumas.  Dr. Toomer further acknowledged that the only traumas discussed by Deronceler with him were related to the loss of his father and to substance abuse.

15.     Dr. Toomer also acknowledged that he had not reviewed any of Deronceler's medical records.

16.     Dr. Toomer also acknowledged that he did not include in his report Deronceler's denial of any form or trauma or abuse to the probation officer who prepared the pre-sentence investigation report.

17.     Although he characterized Deronceler's functioning as borderline to low average. Dr. Toomer did not balance that observation with Deronceler's fluency in three languages—English, French and Creole—plus some understanding of Spanish and Arabic.

18.     Dr. Toomer's report did not reflect that Deronceler was incapable of understanding the charges against him; or that he lacked sufficient ability to understand the legal proceedings in which he was involved and their purpose.

19.     Dr. Toomer acknowledged that his report did not address the issue of Deronceler's competency as defined by the federal statute and explained that that was not the purpose of his

evaluation.

20.    On re-direct examination, Dr. Toomer explained that, prior to his evaluation of Deronceler in 2016 at age 33, the Informants had known Deronceler for the following periods of time: Shaunte Brown, 10 years; Latasha Neloms, 15 years; and Patricia Harris, 4 years.

21.    With regard to Deronceler's medical records, Dr. Toomer stated that he did not need them for purposes of his evaluation and that, in his view, he had obtained what was necessary and sufficient for that purpose.

22.    According to Dr. Toomer, Deronceler's overall I.Q. score was below average because he had problems with attention and processing speed, resulting in a downward skewing of his total score.

**B. Dr. Luis' testimony.**

23.    Dr. Luis has a Ph.D. in psychology and has been employed as chief psychologist and forensic psychologist at FDC.  He testified at the Evidentiary Hearing as an expert witness in the field of forensic psychology.

24.    Dr. Luis conducted a competency evaluation of Deronceler during the period from February 17, 2015, to March 19, 2015, pursuant to Court Order.

25.    Dr. Luis testified as to his understanding of what triggered a concern with Deronceler's competence as follows:

> Well, it seems that the specific issues are this -- what's called a sovereign citizen, or a Moorish Science mentality, where many of these defendants -- and we've seen a lot of these get referred for forensic evaluations in the Bureau of Prisons -- they question the jurisdiction of the federal courts. They question whether they're citizens of the United States of America, or whether they're only citizens of the specific state that they reside in.
>
> And this is -- this is things that, in my time, I've done numerous evaluations of defendants with this type of defense strategy. It seems like the goal is to either obstruct the local -- the legal proceedings by doing different motions, filings. I've

seen some where they have filed lawsuits against judges or prosecutors for uttering their names in courts and different things like that. It involves different issues, like filing with a Uniform Commercial Code, in a sense, filing against themselves as a debtor.

In this case, Mr. Deronceler actually had that filing. It happened during the evaluation period. And in this, they believe that -- it becomes what they call a strongman defense. The individual believes that that entity no longer exists, or that entity is a debt to the person. They'll change the name many times in different ways. Moorish Science, oftentimes, you'll see the term like El Bey associated with the name. That also applies in Mr. Deronceler's case.

So I've seen that type of mentality, or ideology, as it relates to the legal system and the questioning of the jurisdiction of the federal courts.

See Evidentiary Hearing Transcript [D.E. 51 at 101-02].

26.     Dr. Luis found Deronceler to be semi-cooperative during the course of the evaluation because his responses were mostly vague and evasive.

27.     Dr. Luis did not find Deronceler to be an accurate source of information about himself.  Additionally, Deronceler provided no information about his family.

28.     With regard to his education, Deronceler reported completing the eleventh grade, but, at another time, said he had a 30th degree education.

29.     Deronceler denied any history of any mental health treatment to Dr. Luis and to the FDC medical department.

30.     Deronceler did not indicate at any time during the evaluation that he wanted assistance from a lawyer.  In Dr. Luis' experience, defendants who invoke the sovereign citizen or Moorish Science defense strategy are commonly referred for competency evaluation because they want to represent themselves.

31.     Dr. Luis explained that, notwithstanding Dr. Toomer's criticism, his use of the Georgia Court Competency Test ("GCCT") to evaluate Deronceler's competence was appropriate because the GCCT seeks to measure a defendant's factual understanding of the legal proceedings,

which is part of an assessment of competency to stand trial.

32.     Although Deronceler's competency score was low and consistent with people who are malingering, Dr. Luis did not assign a malingering classification to Deronceler because he found that, rather than fabricating impairment, Deronceler "was just being oppositional and not wanting to comply with the test structure; meaning, he just answered, I don't know."  Id. at 113.

33.     With regard to Deronceler's medical records during the evaluation period, from January through March 2015, Deronceler "did not report any problems, any history of any serious concerns, nor did he receive any treatment in that period."  Id. at 118; see also Gov't Ex. 26 (Deronceler's Bureau of Prisons medical records admitted only as corroboration of Dr. Luis' testimony).

34.     As a result of his evaluation, Dr. Luis concluded that Deronceler "did not suffer from any mental disease or defect that would impair his ability to rationally and factually understand the legal proceedings against him."  Id. at 125.[3]

35.     Dr. Luis further testified that, "In Dr. Toomer's report, there is nothing -- there has never been a diagnosis that would suggest a mental disease or defendant that would impair . . . his understanding of the legal proceedings."  Id. at 128.

36.     Dr. Luis did not attempt to assess Deronceler's I.Q. due to his being non-cooperative with the evaluation process.  With regard to Dr. Toomer's use of the Wechsler Abbreviated Scale of Intelligence ("WASI"), Dr. Luis opined that it was an appropriate test but that Dr. Toomer's interpretations were somewhat confusing.  According to Dr. Luis, Deronceler's score on the WASI placed him in the "low average range" for intelligence but was "not reflective

---

[3]  In his Motion to Vacate, Deronceler does not challenge Dr. Luis' competency opinion.  See Evidentiary Hearing Transcript [D.E. 51 at 94].

of somebody who has intellectual disability." <u>Id.</u> at 131-32.

37.     On cross-examination, Dr. Luis acknowledged that in the course of his evaluation he did not speak to counsel and explained that in some cases he would do so, depending on the situation.

38.     On re-direct examination, Dr. Luis clarified that he did not speak to government counsel in 2015 when he was conducting Deronceler's evaluation.

### C. Attorney Joffe's testimony.

39.     Attorney Joffe has been a practicing criminal defense attorney for thirty-four years. In the course of his practice, he has had experience with mental health and competency evaluations of criminal defendants.

40.     Attorney Joffe was retained to represent Deronceler on appeal and agreed to also represent him at sentencing.

41.     Attorney Joffe discussed with Deronceler available arguments or defenses or strategies for his sentencing and filed pleadings on his behalf in preparation for the sentencing hearing.

42.     Attorney Joffe argued for a lower sentence for Deronceler based on diminished mental capacity but did not prevail on this argument.

43.     Having reviewed Dr. Luis' competency report, Attorney Joffe did not seek to have Deronceler reevaluated for potential mental health issues.  According to Attorney Joffe, this decision

> was based upon [his] experience as a criminal defense attorney. It was based upon [his] experience in reading the report. It was based upon [his] experience in discussing that with Mr. Deronceler. It was based upon [his] experience in [his] communication with Mr. Deronceler, and observing Mr. Deronceler, and his ability to communicate, interact with [Attorney Joffe]. All of those factors went into that.

And, also, what was stated within the four corners of that report, those were all factors [Attorney Joffe] took into consideration.

Id. at 143.

44.    Attorney Joffe further testified that, as part of his strategic assessments, he presented any arguments he had for a more lenient sentence in those proceedings.

45.    With regard to the appeal, Attorney Joffe reviewed the transcripts from the trial and the earlier proceedings in the case.   Based on his experience, Attorney Joffe evaluated the arguments that he thought would be the most effective ones to present to the Court of Appeals. However, Deronceler was not successful with respect to: his direct appeal to the Eleventh Circuit; his petition for rehearing *en banc*, and his writ of certiorari to the United States Supreme Court.

46.    Attorney Joffe's customary practice in preparing appeals, which he followed in Deronceler's case, is to send his clients copies of the transcripts and encourage them to read through the transcripts and communicate any issues or concerns they might have for potential incorporation in the appellate brief.   Attorney Joffe did not recall Deronceler voicing any objections to Attorney Joffe's appellate arguments.

47.    Deronceler did express a lot of dissatisfaction with the trial judge and standby counsel.  However, Deronceler never told Attorney Joffe that he wanted a lawyer to represent him during trial other than standby counsel.

48.    Attorney Joffe retained Dr. Toomer after sentencing and after learning that Deronceler had been attacked and beaten while in federal custody at a facility in Louisiana, but before there was an appellate ruling in the case.[4]

49.    Attorney Joffe traveled to Louisiana to meet with Deronceler at the facility and

---

[4]  As noted above, Deronceler was sentenced on November 2, 2015; the Notice of Appeal was filed on November 3, 2015; and Deronceler's conviction and sentence were affirmed on June 11, 2018.

obtained Deronceler's medical records from the Bureau of Prisons ("BOP").

50.     After reviewing the medical records, Attorney Joffe concluded that Deronceler "had obviously been in an altercation." Id. at 149.  However, the records "certainly weren't to a level of injury that [Attorney Joffe] was told they were.  There was no -- there was no brain damage." Id.  Also, Deronceler "appeared to be fine" other than "bumps, scrapes and bruises" but "nothing to the level that [Attorney Joffe] was told.  [He] expected to see severe injury, and . . . it just wasn't articulated in that report." Id. at 149-50.

51.     Thus, Attorney Joffe concluded that there was no injury case for him to pursue and informed Deronceler and his paramour, who had retained Attorney Joffe, of this conclusion.

52.     On cross-examination, Attorney Joffe testified that approximately one third of his practice involves appeals, with some assistance from a paralegal and another lawyer.  However, in terms of appellate briefs, he does the final product.

53.     Attorney Joffe also explained that the purpose of retaining Dr. Toomer was the possibility of bringing a lawsuit against the Bureau of Prisons for Deronceler's beating and the claim that he had suffered brain damage.  However, when he visited Deronceler at the Louisiana prison shortly after the incident, Attorney Joffe didn't see any physical injuries on or about Deronceler.

54.     Attorney Joffe summarized the timeline of his involvement in the case as follows:

        - September 10, 2015: notice of appearance filed

        - November 2, 2015: sentencing hearing held

        - November 3, 2015: notice of appeal filed

        - September 2, 2016: initial brief filed (after Dr. Toomer's evaluation)

55.     At the sentencing hearing, Attorney Joffe had argued that Deronceler should not be

penalized for having represented himself at trial and that, with regard to his competency evaluation, had he "received proper advice and counsel" he could have requested "to have at least one or two doctors appointed to do a forensic psychological evaluation as well as a forensic neuro-psych eval." See Transcript of Sentencing Hearing [D.E. 1-2 at 13].  Attorney Joffe also argued for a sentencing variance on the grounds that "Deronceler apparently suffer[ed] from mental health issues and diminished capacity." Id. at 79.  According to Attorney Joffe, "had Mr. Deronceler had the benefit of competent counsel, I think he would have been able to have his own doctors appointed to conduct a forensic psychiatric or psychological evaluation as well as a forensic neurospsych eval." Id.

56.     At the Evidentiary Hearing, Attorney Joffe acknowledged that he had brought up issues regarding Deronceler's competency evaluation but did not hire an expert and relied instead "upon the report that was done by the psychologist at FDC".  See Evidentiary Hearing Transcript [D.E. 51 at 158-59].

57.     Attorney Joffe further testified that he "did not consider consulting a psychological expert of [his] own until Mr. Deronceler was beaten at the prison" and that he "saw no need to do that prior to sentencing".  Id. at 161.

58.     On re-direct examination, Attorney Joffe acknowledged that, "at sentencing, [he] didn't know what another examiner would find, even if [he] had hired one".  Id. at 163.

**D.  *Affidavit of Marcia Silvers, Esq. ("Silvers Aff.")***

59.     Movant has proffered the Affidavit of Marcia Silvers, Esq. ("Attorney Silvers"), an attorney who "ha[s] been counsel of record in numerous federal and State criminal appeals."  See Silvers Aff. [D.E. 35-1 at 3].

60.     Based on her review of the record, Attorney Silvers opines that Attorney Joffe

should have argued on direct appeal that Deronceler's Sixth Amendment right to counsel was violated: (1) "when he was permitted to appear at a competency hearing on April 10, 2015 without being represented by counsel and without a full *Faretta* hearing having been conducted"; and (2) "because he did not knowingly and voluntarily waive his right to counsel at a *Faretta* hearing held on April 21, 2015". Id. at 2.

61.     Attorney Silvers further opines that, in failing to raise these issues on appeal, Attorney Joffe "did not function as the counsel guaranteed by the federal constitution and did not render reasonable effective assistance of counsel". Id.

## CONCLUSIONS OF LAW

As previously noted, Deronceler presents five grounds for relief in his Motion to Vacate. In Ground One, Movant raises a claim for ineffective assistance of appellate counsel for not raising the issues asserted in Grounds Two and Three; therefore, the undersigned deems Grounds Two and Three to be subsumed in Count One.  The undersigned discusses all of Movant's grounds below and finds no merit in any of them.

### 1. *Ground One (with subsumed Grounds Two and Three).*

Ground One mirrors Attorney Silvers' opinion that Attorney Joffe was ineffective for not raising two Sixth Amendment right to counsel issues on appeal, namely, that Deronceler appeared at his April 10, 2015, competency hearing "without being represented by counsel and without a full *Faretta* hearing having been conducted"; and that "he did not knowingly and voluntarily waive his right to counsel at a *Faretta* hearing held on April 21, 2015". See Memorandum [D.E. 1-1 at 5].

A.  The competency hearing.

In her Initial Order after Deronceler's February 2, 2015, appearance for report regarding counsel, Judge McAliley expressly stated that he had "insisted that he represent himself in these proceedings and not be represented by counsel."  See Initial Order [Case 15-20032, D.E. 34 at 1]. Judge McAliley then documented her efforts to conduct a *Faretta* hearing which were met by "mostly non responsive and often nonsensical" responses on the part of Deronceler; and appointed Attorney Lenamon as standby counsel for Deronceler over his objection.  Id.  Given this detailed factual record, it cannot be said that Attorney Joffe's appellate performance was deficient for not arguing that Deronceler's Sixth Amendment right to counsel was violated at the April 10, 2015, competency hearing.

Assuming *arguendo* that the Strickland performance prong is met, Deronceler must also meet the prejudice prong.  See Weaver v. Massachusetts, 137 S. Ct. 1899, 1911 (2017) ("As a rule, therefore, a violation of the Sixth Amendment right to effective representation is not complete until the defendant is prejudiced.") (internal quotations omitted).  However, Deronceler cannot show the requisite prejudice arising from the Court's competency finding.  All that Deronceler proffers is speculation regarding what actions an attorney forcibly appointed to represent Deronceler at the competency hearing would have done.  See Memorandum [D.E. 1-1 at 13-14]. Given Dr. Luis' credible testimony at the Evidentiary Hearing in support of his competency evaluation, Deronceler's speculations are insufficient to satisfy the Strickland prejudice prong.

B.  The *Faretta* Hearing.

At the April 21, 2015, *Faretta* Hearing, Judge Turnoff advised Deronceler "of his right to be represented by counsel, the advisory sentencing guidelines with respect to his case, the Federal Rules of Evidence & Federal Rules of Criminal Procedure."  See Paperless Minute Order [Case

15-20032, D.E. 107].  Judge Turnoff then found that Deronceler was "waiving his right to counsel" and further found "it appropriate" for Attorney Lenamon to "remain in the case" as standby counsel.  Id.

Deronceler argues that his Sixth Amendment rights were violated because he "never asserted a knowing and voluntary waiver of his right to counsel" and "should have never been permitted to proceed to trial *pro se.  See* Memorandum [D.E. 1-1 at 17].  Deronceler relies for this contention on his own irrelevant responses to Judge Turnoff's questions during the *Faretta* colloquy and his claims that he did not understand Judge Turnoff's questions or the government's position.  Id. at 20.  However, by his uncooperative conduct, Deronceler did constructively waive his right to counsel.  See United States v. Garey, 540 F.3d 1253, 1266 (11th Cir. 2008) ("[I]n some instances, a defendant's conduct will reveal a voluntary decision to choose the path of self-representation over the continued assistance of counsel. In such cases, the district court may, in its discretion, conclude the defendant has voluntarily waived his right to counsel.").  As further explained by the Eleventh Circuit:

> A dialogue cannot be forced; therefore, when confronted with a defendant who has voluntarily waived counsel by his conduct and who refuses to provide clear answers to questions regarding his Sixth Amendment rights, it is enough for the court to inform the defendant unambiguously of the penalties he faces if convicted and to provide him with a general sense of the challenges he is likely to confront as a pro se litigant. So long as the trial court is assured the defendant (1) understands the choices before him, (2) knows the potential dangers of proceeding pro se, and (3) has rejected the lawyer to whom he is constitutionally entitled, the court may, in the exercise of its discretion, discharge counsel or (preferably, as occurred here) provide for counsel to remain in a standby capacity. In such cases, a *Faretta*-like monologue will suffice.

Id. at 1267-68.

Given Deronceler's conduct at the April 21, 2015, *Faretta* Hearing, it cannot be said that Attorney Joffe's appellate performance was deficient for not arguing that Deronceler's Sixth

Amendment right to counsel was violated by Judge Turnoff's determination that Deronceler was "waiving his right to counsel". See Paperless Minute Order [Case 15-20032, D.E. 107]. Therefore, Deronceler's ineffective assistance of appellate counsel claim with respect to the *Faretta* Hearing similarly fails. See Strickland, 466 U.S. at 697 (failure to establish either prong is fatal and makes it unnecessary to consider the other one).

Based on the foregoing analysis, the undersigned recommends that the Motion to Vacate be DENIED as to Grounds One, Two and Three.

**2. *Ground Four.***

In Ground Four, Movant contends that his fourteenth amendment right to due process was violated by the Court's denial of his motion to continue trial. As previously noted, there is no motion to continue trial reflected in the record, *supra* n.2. Moreover, this ground is procedurally barred for failure to raise it on direct appeal, absent a showing of cause and prejudice. Frady, 456 U.S. at 167; Mills, 36 F.3d at 1055. Movant contends, however, that "any potential procedural bar to the resolution of this claim is excused because his appellate counsel was ineffective for failing to raise the issue on direct appeal." See Memorandum [D.E. 1-1 at 22 n.12].

As recounted above, a discovery issue arose at the August 5, 2015, calendar call due to Deronceler's non-responsiveness to Attorney Schwarz's prior attempts to deliver discovery materials to him, which the Court resolved by requiring Attorney Schwarz to deliver the discovery materials to Deronceler at FDC by 4:00 p.m. the following day. See Calendar Call Transcript [Case 15-20032, D.E. 342, at 14-21]. Given this factual background, it cannot be said that Attorney Joffe's appellate performance was deficient for failing to raise an issue that was not supported by the record. Therefore, Deronceler's ineffective assistance of appellate counsel claim in Ground Four fails. See Strickland, 466 U.S. at 697 (failure to establish either prong is fatal and makes it

unnecessary to consider the other one).

### 3. *Ground Five.*

In Ground Five, Movant argues that Attorney Joffe, in his role as sentencing counsel, was ineffective for failing to have him evaluated prior to sentencing.  Movant relies for this argument on Attorney Joffe's expressed awareness at sentencing of Movant's psychological issues and Dr. Toomer's post-sentencing evaluation.

At the Evidentiary Hearing, Attorney Joffe credibly testified that, having reviewed Dr. Luis' competency report, he did not seek to have Deronceler reevaluated for potential mental health issues based upon the following factors: his experience as a criminal defense attorney; his own review of the contents of the report; and his discussions with, and observations of Deronceler and his ability to communicate.  Attorney Joffe further testified that, as part of his strategic assessments, he presented any arguments he had for a more lenient sentence in those proceedings. Thus, Attorney Joffe's testimony supports the conclusion that his performance as sentencing counsel fell "within the wide range of reasonable professional assistance" and was based on strategy.  See Strickland, 466 U.S. at 689.  Because he does not satisfy the performance prong, Deronceler's ineffective assistance of sentencing counsel claim in Ground Five fails.  Id. at 697 (failure to establish either prong is fatal and makes it unnecessary to consider the other one).

### **RECOMMENDATION**

Based on the foregoing considerations, it is RESPECTFULLY RECOMMENDED that Deronceler's Motion to Vacate be DENIED.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  See Local Magistrate Rule 4(b).  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  See

<u>Resolution Tr. Corp. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  <u>See</u> 11th Cir. R. 3-1 (I.O.P. - 3).

      RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this <u>25th</u> day of July, 2022.


                               _____

                               ALICIA M. OTAZO-REYES
                               UNITED STATES MAGISTRATE JUDGE


Copies provided to:
United States District Judge Darrin P. Gayles
Counsel of Record